STATE OF RHODE ISLAND                                                SUPERIOR COURT
PROVIDENCE, SC.

WILLIAM CALISE *and* KRYSTAL DENT,:
:
    *Plaintiffs*,
:
v.                                                              C.A. No.:
:
BRADY SULLIVAN HARRIS MILL, LLC,:
BRADY SULLIVAN PROPERTIES, LLC, :
JOHN DOES 1-5, JANE DOES 1-5, *and* :
XYZ CORPORATIONS 1-5, :
:
    *Defendants*. :

## COMPLAINT

Now come Plaintiffs, William Calise and Krystal Dent, by and through their undersigned counsel, and complains as follows:

## PARTIES

1. Plaintiff William Calise (hereinafter "Mr. Calise") is a resident of the Town of Coventry in the State of Rhode Island.

2. Plaintiff Krystal Dent (hereinafter "Ms. Dent") is a resident of the Town of Coventry in the State of Rhode Island.

3. Upon information and belief, Defendant Brady Sullivan Harris Mill, LLC (hereinafter "BSHM") is a domestic limited liability company doing business in the State of Rhode Island with a principal office at 670 N. Commercial Street, Manchester, NH 03101.

4. Upon information and belief, Defendant Brady Sullivan Properties, LLC (hereainfter "Brady Sullivan") is a domestic limited liability company doing business in the State of Rhode Island with a principal office at 670 N. Commercial Street, Suite 300, Manchester, NH 03131.

1

In Providence/Bristol County Superior Court
Submitted: 1/25/2018
Envelope: 1383773
Reviewer: Lynn G.

Case 1:18-cv-00099-WES-PAS   Document 1-1   Filed 02/28/18   Page 2 of 9 PageID #: 6

5. Defendants John Does 1-5, Jane Roes 1-5, and XYZ Corporations 1-5 (hereinafter collectively the "additional defendants") are individuals or other legal entities, whose identities are currently unknown but who are believed to exist.

6. Upon information and belief, the negligence of the additional defendants contributed to Plaintiffs' injuries as alleged herein. Accordingly, Plaintiffs request leave of this Court to more specifically identify these defendants as that information becomes available.

## JURISDICTION

7. The amount in controversy in the above-captioned action is sufficient for this Court to have exclusive original jurisdiction pursuant to R.I.G.L. §8-2-14.

8. This is the proper venue for the above-captioned action.

## FACTUAL BACKGROUND

9. The above-captioned action arises out of personal injuries suffered by Plaintiffs due to the neglect and reckless disregard by all Defendants.

10. BSHM, Brady Sullivan, and the additional defendants (hereinafter collectively "Defendants") own, operate, manage, maintain, supervise, and/or are otherwise responsible for a residential property called the Harris Mill Loft located at 618 Main Street in Coventry, Rhode Island ( hereinafter the "Mill").

11. As of the filing of this complaint, Plaintiffs are occupants of unit 3-113 at the Mill.

12. Plaintiffs first moved into their apartment at the Mill on October 7, 2016.

13. Several weeks after moving into unit 3-113, Plaintiffs began to notice small, black gnats flying inside the apartment.

14. Plaintiffs continued to see an increasing number of pests despite any efforts to eliminate them.

15. Shortly thereafter, the gnat problem in Plaintiffs' unit became uncontrollable.

16. Plaintiffs noticed a majority of the gnats seemed to come from the bathroom of the apartment, particularly near a portion of the bathroom ceiling and walls which appeared water-stained.

17. On several occasions, Mr. Calise contacted BSHM employees, including property management, to let Defendants know of the pest problem and water stains in the unit.

18. Defendants repeatedly delayed any response to Mr. Calise's complaints regarding the gnats or the potential water damage.

19. When Defendants finally sent an employee into Plaintiffs' apartment to review the gnat infestation, the employee indicated the pests were nothing to worry about, and that they should hopefully disappear by winter time.

20. When the infestation did not subside, Defendants' employees eventually entered Plaintiffs' apartment and cut a hole in the ceiling near the water stains in Plaintiffs' bathroom.

21. Upon information and belief, the gnats in Plaintiffs' apartment were "fungus gnats," small insects that infest and feed on organic decomposition such as mold.

22. Upon information and belief, Defendants' employee cut a hole in the bathroom ceiling to search for mold, where the gnats may be nested or feeding.

23. Defendants' employee ultimately indicated that he did not see anything unusual in Plaintiffs' bathroom ceiling.

24. Mr. Calise indicated to Defendants that he intended to hire a pest control company and mold inspector.

25. Defendants insisted that they would not pay for Mr. Calise to obtain an independent inspection, and stated they would bring in a contractor.

26. Defendants hired multiple pest control workers to attempt to alleviate the gnat problem in Plaintiffs' apartments.

27. The first pest control worker indicated to Mr. Calise the gnat problem was likely due to gnats thriving behind the bathroom walls or ceiling due to moisture problems and poor ventilation.

28. On multiple occasions, Defendants' contractors sprayed pesticides and/or other chemicals throughout the apartment to control the gnats.

29. The gnat infestation remained unresolved.

30. Thereafter, Defendants hired a mold inspector to inspect Plaintiffs' apartment.

31. Plaintiffs were informed that the lab analysis following the mold inspection detected low amounts of mold inside the ceiling and the walls in Plaintiffs' bathroom.

32. After several weeks, Defendants patched the hole in Plaintiffs' bathroom ceiling and painted over the nearby water stains, remarking they would wait and see if the water damage returned.

33. Finally, in the fall of 2017 Defendants accused Plaintiffs' house plants of causing the gnat infestation in their apartment.

34. Mr. Calise made it clear to Defendants that the gnats were present long before any plants were introduced to the apartment.

35. Nonetheless, on September 1, 2017, Defendants attached a letter to Plaintiffs' door which accused Plaintiffs of causing the infestation and giving three (3) weeks to remedy the situation or be evicted.

36. Upon information and belief, the presence of gnats in Plaintiffs' apartment is being caused by significant mold in the walls, ceiling, ventilation, and other areas of the unit.

37. Prior to moving in to the apartment at the Mill, Mr. Calise suffered minor seasonal allergies, but only during certain times of the year. He had not experienced environmental allergies.

38. Prior to moving in to the apartment at the Mill, Ms. Dent had never suffered any seasonal or environmental allergy problems.

39. Since moving in to the apartment at the Mill, Plaintiffs have both been having severe allergy symptoms.

40. Ms. Dent has required the regular use of antihistamines to combat her allergies.

41. Mr. Calise has also suffered a variety of respiratory symptoms including heart palpitations, night sweats, fatigue, chest tightness, and difficulty breathing.

42. Mr. Calise has also suffered the appearances of rashes in various spots across his body.

43. Both Plaintiffs have experienced repeated nosebleeds while in the apartment.

44. During a recent visit to his primary care physician, Mr. Calise complained of his difficulties breathing.

45. Mr. Calise's physician administered a breathing test, which Mr. Calise failed.

46. Mr. Calise was immediately referred to a pulmonologist, and will be following up in early February, 2018.

47. Upon information and belief, Plaintiffs' allergy and respiratory symptoms result from the presence of mold, lead, pests, and other harmful airborne and waterborne toxins present in and immediately around their apartment at the Mill.

48. Neither Mr. Calise nor Ms. Dent suffered from any of the above listed ailments prior to residing at the Mill.

49. As a result of their symptoms and the conditions of their apartment, Plaintiffs have been forced to move out of their unit at the Mill as soon as possible.

## COUNT I: NEGLIGENCE

50. Plaintiffs incorporate and reallege paragraphs 1-49 as if restated herein.

51. Defendants had a duty to provide Plaintiffs with housing replete of any hazardous conditions.

52. Defendants had a duty to investigate and correct any hazardous conditions in accordance with the Rhode Island General Laws.

53. Plaintiffs repeatedly made Defendants aware of hazardous and dangerous conditions which existed in and immediately around Plaintiffs' apartment throughout their rental of said premises.

54. Defendants knew or should have known of the dangerous conditions in which they placed Plaintiffs.

55. Upon information and belief, Defendants were also informed of the dangerous and hazardous conditions in the buildings by other tenants of the Mill.

56. Defendants failed to provide Plaintiffs housing that was free of hazardous conditions.

57. As a result of Defendants' negligence Plaintiffs have suffered extreme and irreparable harm.

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiffs incorporate and reallege paragraphs 1-57 as if restated herein.

59. Defendants acted recklessly and with complete disregard for the safety of the Plaintiffs.

in Providence/Bristol County Superior Court
Submitted: 1/25/2018 6:32:11 PM
Envelope: 1383773
Reviewer: Lynn G.

Case 1:18-cv-00099-WES-PAS   Document 1-1   Filed 02/28/18   Page 7 of 9 PageID #: 11

60. Defendants engaged in shoddy workmanship by constructing Plaintiffs' unit without any mold remediation or prevention (subflooring, vapor barriers, etc.)

61. No mold remediation was performed in response to repeated reports by Plaintiffs; mold spots on walls and ceilings were simply covered up with paint.

62. No effective treatment was performed for the gnat infestation in Plaintiffs' apartment.

63. Upon information and belief, improper cleanup or lack of cleanup of the building prior to Defendants' renovation of the Mill has resulted in multiple hazardous waterborne and/or airborne pathogens remaining present in Plaintiffs' apartment.

64. As a result of Defendants' negligence, Plaintiffs have suffered extreme and permanent bodily injuries.

65. Furthermore, Defendants have wrongfully accused Plaintiffs of causing their symptoms and the awful conditions in their apartment.

66. Defendants have also retaliated against Mr. Calise's complaints by threatening to evict Plaintiffs from their apartment.

67. As a result of Defendants' negligence, Plaintiffs have suffered severe emotional distress, culminating in multiple physical symptoms and maladies.

68. But for the negligent acts of Defendants, Plaintiffs would not have suffered said injuries.

## COUNT III: VIOLATION OF THE TOXIC SUBSTANCES CONTROL ACT (TSCA), THE RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT, THE RENOVATION, REPAIR AND PAINTING RULE (RRP RULE), 40 C.F.R. PART 745, SUBPART E, AND THE LEAD-BASED PAINT DISCLOSURE RULE, 40 C.F.R. PART 745, SUBPART FEPA

69. Plaintiffs incorporate and reallege paragraphs 1-68.

70. Defendants have failed to comply with the Federal Statute regarding lead disclosures.

71. Defendants have failed to provide tenants with copies of the lead handbook as required by law.

72. Defendants have failed to attach the lead certification to the lease as required by law and as outlined in the lease agreement.

73. Defendants violated the lead laws and subjected Plaintiffs to hazardous lead dust and lead chipping paint.

## COUNT IV: CIVIL LIABILITY FOR VIOLATION OF THE RHODE ISLAND GENERAL LAWS

74. Plaintiffs incorporate and reallege paragraphs 1-73 as if restated herein.

75. Defendants have violated RIGL 11-5-2.2 by committing a battery against Plaintiffs.

76. Plaintiffs have suffered harm at the hands of the Defendants through their actions and inactions.

77. Defendants' actions are the direct and proximate cause of the injuries that have been sustained by Plaintiffs.

78. Defendants have failed to comply with the Rhode Island Landlord Tenant Statutes.

79. As a result of the Defendants' willful and wanton conduct, Plaintiffs suffered extreme and permanent injuries.

## COUNT V: VIOLATION OF THE RHODE ISLAND LANDLORD TENANT ACT

80. Plaintiffs incorporate and reallege paragraphs 1-79 as if restated herein.

81. Pursuant to the Rhode Island Landlord Tenant Act, Defendants were required to notice Plaintiffs of any housing code violation within thirty (30) days following notice.

82. Defendants were notified of housing code violations by the Town of Coventry.

83. Defendants failed to notice Plaintiffs of the violations within thirty (30) days.

84. Defendants have failed to provide to the Plaintiffs an inhabitable residence.

8

85. Additionally, Defendants have retaliated against Plaintiffs in response to Mr. Calise's complaints to Defendants about the pest infestation which made the unit uninhabitable.

86. As a result of the Defendants' willful and wanton disregard of the statutes, Plaintiffs have suffered extreme and permanent injuries.

## COUNT VI: PUNITIVE DAMAGES

87. Plaintiffs incorporate and reallege paragraphs 1-86 as if restated herein.

88. Defendants' actions were grossly negligent.

89. Defendants have been cited for the same or similar infractions listed in this complaint on numerous occasions.

90. Defendants will continue their egregious behavior unless this Court awards punitive damages to deter this behavior and to protect others who may fall prey to Defendants.

WHEREFORE, Plaintiffs pray for the following relief:

1. That the Court find the Defendants liable on all counts;
2. That the Court award the Plaintiffs $2,000,000 in compensatory damages;
3. That the Court impose punitive against Defendants in the amount of $10,000,000
4. Any and all other relief that this Court deems meet and just.

Respectfully submitted,

Plaintiffs,
WILLIAM CALISE and KRYSTAL DENT,
By their Attorneys,

/s/ Daniel Calabro, Jr.
Artin Coloian, Esq. (#5902)
Daniel Calabro, Jr., Esq. (#7850)
127 Dorrance Street
Providence, RI 02903
T: (401) 861-9400
F: (888) 461-1955
CalabroLaw@gmail.com