# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

WILLIAM CALISE, et al.,                  :
           Plaintiffs,                   :
                                        :
           v.                            :     C.A. No. 18-99WES
                                        :
BRADY SULLIVAN HARRIS                     :
MILLS, LLC, et al.,                       :
           Defendants.                   :

                                    <u>Consolidated with</u>

JOSEPH M. RACHIELE, et al.,               :
           Plaintiffs,                   :
                                        :
           v.                            :     C.A. No. 18-100WES
                                        :
BRADY SULLIVAN HARRIS                     :
MILLS, LLC, et al.,                       :
           Defendants.                   :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

> Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living.

> R.I. Rules of Professional Conduct, Preamble ¶ 9.

This wise precept, established by the Rhode Island Supreme Court as a guide for

attorneys in discharging their competing responsibilities, supplies the motif that recurs

throughout the unfortunate tale told in this report and recommendation. Pending before the

Court is the motion of Defendants Brady Sullivan Harris Mill, LLC, and Brady Sullivan

Properties, LLC, ("Brady Sullivan") seeking a permanent injunction.[1] ECF No. 65. The motion

---

[1] Brady Sullivan labeled its motion as one seeking "Protective Order and Other Relief." ECF No. 65 at 1. At the hearing on the motion, the parties and Attorneys Coloian and Calabro agreed that it is really a motion seeking a

arises in both of these consolidated cases ("the Cases"),[2] which are based on an alleged mold infestation in a renovated mill building. Brady Sullivan is the real estate development corporation that renovated and manages the building; Plaintiffs are tenants in two of the apartment units. The motion veers off course from the merits of the Cases. Its focus is on the conduct of the two attorneys – Artin Coloian and Daniel Calabro, Jr. – who filed both of the Cases but withdrew on the eve of the Court's bench decision on Brady Sullivan's motion to disqualify them. Plaintiffs are now represented by other counsel.

The pending motion is based on Brady Sullivan's well-founded assertion that Attorneys Coloian and Calabro accepted as clients two of its former employees, an engagement fraught with undisclosed and unresolved conflicts of interests, as a result of which the Attorneys came into possession of Brady Sullivan's contractually protected confidential information, attorney-client information and related attorney work product (collectively, "Confidential Information") without authorization or consent in violation of Brady Sullivan's legal rights. Having acted promptly and worked aggressively to stuff the genie back in the bottle, Brady Sullivan now seeks to bring the matter to a close for good with a permanent injunction banning Plaintiffs and Attorneys Coloian and Calabro from using, reviewing, discussing, communicating and/or forwarding the Confidential Information to anyone (including successor counsel) and prohibiting Attorneys Coloian and Calabro from receiving or otherwise participating in any attorneys' fees associated with the Cases.

---

permanent injunction, which is an excepted motion pursuant to 28 U.S.C. § 636(b)(1)(A). Therefore, I must issue a report with proposed findings of fact and recommendations for disposition. Id. § 636(b)(1).

[2] Unless indicated otherwise, all ECF citations are to the first filed case, Calise v. Brady Sullivan, C.A. No. 18-99WES. The Court consolidated the cases on March 28, 2018. Text Order of Mar. 28, 2018.

The Court's task in resolving the motion is eased by the absence of any dispute over the remedy: Plaintiffs (acting through their new counsel) and Attorneys Coloian and Calabro agree that Brady Sullivan may have the requested relief. The sticking point is whether the Court will issue the permanent injunction based a reasoned decision that includes findings of fact based on violations of the Rhode Island Rules of Professional Conduct, particularly R.I. Rules 1.7, 4.3 and 4.4(a).[3]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The motion arises from events that occurred mostly in March 2018, which may be briefly summarized.[4] At its heart are two former management-level employees of Brady Sullivan: Julio Basabe, Maintenance Manager, and Christina Rahn, Property Manager (the "former employees").

As a condition of their employment with Brady Sullivan, both of the former employees signed confidentiality agreements barring them from, *inter alia*, disclosing certain information related to Brady Sullivan's products or services. At least one of them, Rahn, was privy to extensive confidential attorney-client communications directly related to the issues in the Cases and related matters pertaining to other tenants and former tenants of Brady Sullivan. While still employed at Brady Sullivan, Rahn surreptitiously printed, copied on thumb drives or CDs and/or emailed to her home email account Brady Sullivan documents that included substantial quantities of Brady Sullivan's confidential attorney-client information. Shortly after the Cases were filed by Attorneys Coloian and Calabro, the former employees abruptly resigned from Brady Sullivan

---

[3] The Rhode Island Rules of Professional Conduct are codified as Article V of the Rhode Island Supreme Court Rules; in the interest of brevity, they will be cited as "R.I. Rule __."

[4] The factual background summarized here is reiterated *infra* in the form of proposed findings of fact, together with the source of each proposed fact. The source citations are not repeated here.

and immediately engaged Attorneys Coloian and Calabro to represent them in connection with matters pertaining to Brady Sullivan. Attorneys Coloian and Calabro undertook this engagement and provided legal advice to the former employees despite the obvious conflict between the interests of the former employees and their existing clients, Plaintiffs and other tenants or former tenants of Brady Sullivan contemplating or already in litigation against it.

Over several days in March 2018, having formed an attorney-client relationship with the former employees, Attorneys Coloian and Calabro obtained information from Basabe and Rahn. They accepted documents from Rahn that she had secretly taken while employed at Brady Sullivan. Among these documents were many clearly reflecting Brady Sullivan's attorney-client communications. Attorneys Coloian and Calabro reviewed at least a handful of these documents, which constituted bulls-eye attorney-client communications between Brady Sullivan and its counsel regarding matters directly pertaining to the Cases and related matters.

There is no evidence that Attorneys Coloian and Calabro advised Basabe or Rahn about the jeopardy posed to them by breaching the confidentiality agreements or any duty of loyalty they might owe to their former employer. There is no evidence that Attorneys Coloian and Calabro advised Rahn about the jeopardy posed to her by her actions in taking and making a wholesale disclosure of Brady Sullivan's attorney-client information to the attorneys for the parties opposing it in litigation. There is no evidence that Attorneys Coloian and Calabro instructed either Rahn or Basabe not to disclose Brady Sullivan Confidential Information or took any steps to avoid an unwarranted intrusion into Brady Sullivan's privileged relationships. There is no evidence that Attorneys Coloian and Calabro advised or obtained a written waiver from Basabe or Rahn regarding limitations on the Attorneys' ability to represent the former employees in light of the Attorneys' concurrent representation of Plaintiffs and their other tenant clients.

Relatedly, Attorneys Coloian and Calabro did not advise or obtain a written waiver from Plaintiffs or any of their other tenant clients on their acceptance of a materially limiting competing engagement. Instead, despite the conflicts, in derogation of their duty to Basabe and Rahn and likely animated by the competing duty owed to Plaintiffs and the other tenant clients, the Attorneys communicated with the former employees without regard to the confidentiality of the information being provided, and accepted documents from Rahn that they knew Rahn had taken from Brady Sullivan during her employment, among which they found (and accessed) Brady Sullivan's purloined attorney-client information.

Beginning on March 5, 2018, Brady Sullivan was alerted to the possibility of the breach through comments Attorney Coloian made to one of its attorneys. After further investigation, it promptly sued the former employees, Basabe and Rahn, in a separate action filed on March 15, 2018, and removed to this Court on March 22, 2018. Brady Sullivan v. Rahn, C.A. No. 18-133WES ("18-133").[5] On April 12, 2018, the Court entered an injunction mandating that Basabe and Rahn comply with the confidentiality agreements, as well as that they and their attorneys (Attorneys Coloian and Calabro, and Attorney Sean Doherty, who briefly entered an appearance on behalf of Basabe and Rahn) must return all of the Brady Sullivan Confidential Information, including the attorney-client privilege information, to Brady Sullivan. 18-133 ECF No. 20.

Because the Confidential Information taken by Rahn had been delivered in various electronic formats and in hard copy, the Court's April 12, 2018, Order included specific requirements to ensure its return. This triggered a flurry of collateral activity in 18-133, as Brady Sullivan worked diligently to recover all of the Confidential Information. However, through no fault of Basabe, Rahn or Attorneys Coloian and Calabro, all of whom cooperated in good faith to

---

[5] To distinguish it from citations to the Cases, this report and recommendation uses "18-133 ECF No. __," for citations to the case against the former employees.

comply with the Court's April 12, 2018, Order, this effort was not entirely successful. Most recently, at the hearing of February 28, 2019, it was revealed that two thumb drives containing thousands of documents taken by Rahn appear to be irretrievably lost. Transcript Feb. 28, 2019, at 24, 26, 34 (18-133 ECF No. 69).[6] Meanwhile, Basabe and Rahn are no longer actively defending themselves in 18-133; as a result, the clerk has entered default against them. 18-133 ECF No. 66.

Returning to the Cases, on April 13, 2018, based on R.I. Rules 4.4(a) and 1.7(a), Brady Sullivan moved to disqualify Attorneys Coloian and Calabro from representing Plaintiffs; the motion was supported by the depositions of Rahn and Basabe and the affidavits of one of Brady Sullivan's attorneys and its Information Technology ("IT") Manager. Following a hearing at which both parties declined the Court's offer to hear testimony, the Court scheduled the motion to disqualify for a bench decision to be delivered on July 25, 2018; this date was extended to September 25, 2018, at the request of the parties. Less than one week before the bench decision, Attorneys Coloian and Calabro filed notices of their withdrawals and substitute counsel entered for Plaintiffs. At the September 25 hearing, the Court found that the motion to disqualify had become moot but that serious issues remained to be resolved. To allow Brady Sullivan time to consider its options and with no objection from Plaintiffs, the Court entered a non-disclosure order barring Attorneys Coloian and Calabro from using or forwarding any of the Confidential Information to successor counsel or any other person, with a deadline of October 25, 2018, for

---

[6] The transcripts for this and other hearings are cited as: "Transcript Feb. 28, 2019, at __." The first time each transcript is cited, the ECF number is included.

Brady Sullivan to file a motion seeking an injunction or sanctions for permanent relief.[7]  Text Order of Sept. 26, 2018.

On October 25, 2018, the current motion was filed. As directed by the Court, Brady Sullivan supplemented the motion with proposed findings of fact and conclusions of law.  In response, Plaintiffs and Attorneys Coloian and Calabro made clear that they did not object to entry of the permanent injunction sought by Brady Sullivan.  However, Attorneys Coloian and Calabro objected vigorously to the Court's issuance of a reasoned decision, arguing that there is no Article III case or controversy because Brady Sullivan's injury is speculative and hypothetical and that the motion amounts to an improper interference with the contractual agreement between Attorneys Coloian and Calabro and their former clients, Plaintiffs and the other tenants and former tenants.  The Court offered the parties the opportunity to have an evidentiary hearing; Attorneys Coloian and Calabro declined, while Brady Sullivan reserved the right to present testimony on any material fact as to which the Court was inclined to sustain an objection asserted by Attorneys Coloian and Calabro.  For the reasons stated *infra*, no evidentiary hearing was deemed necessary.

## II.    STANDARD OF REVIEW

"[T]he district court has the duty and responsibility of supervising the conduct of attorneys who appear before it."  Kevlik v. Goldstein, 724 F.2d 844, 847 (1st Cir. 1984).  This power continues "after that lawyer is no longer representing a party in the proceedings."  SPV-LS, LLC v. Transamerica Life Ins. Co., CIV 14-4092, 2017 WL 3668765, at *4 (D.S.D. Aug. 23, 2017), aff'd in relevant part, reversed in part on separate issue, 912 F.3d 1106 (8th Cir. 2019); Andrew, Merritt, Reilly & Smith, LLP v. Remote Accounting Sols., Inc., 626 S.E.2d 204, 206

---

[7] Because they had withdrawn, Attorneys Coloian and Calabro did not attend the September 25, 2018, proceedings. However, they were served with the non-disclosure order electronically.

(Ga. Ct. App. 2006). The Court's inherent authority extends to addressing the consequences of improper *ex parte* contact with a party's former employee. <u>Zachair, Ltd. v. Driggs</u>, 965 F. Supp. 741, 755 (D. Md. 1997) (finding "wrongly obtained knowledge 'can never be erased from [counsel's] mind'" and ordering disqualification and exclusion of information). It extends to prohibiting predecessor counsel from communicating with successor counsel with respect to the subject litigation when such a restriction is necessary to protect confidential information. <u>Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.</u>, No. C 07-03752 JSW, 2007 WL 3203056, at *5 (N.D. Cal. Oct. 29, 2007) ("[Disqualified attorney] also is prohibited from communicating or forwarding to successor counsel any work product created in the course of this action or in matters related to this action that is based upon or derived from [the company's] confidential information possessed by [disqualified attorney]."). It is also clear that the need for protection against turning over to successor counsel the "tainted" work product of disqualified or withdrawn counsel is a separate and distinct question from whether the attorney should have been disqualified in the first place. <u>Milford Power Ltd. P'ship by Milford Power Assocs., Inc. v. New England Power Co.</u>, 896 F. Supp. 53, 57 (D. Mass. 1995).

"An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." <u>KG Urban Enters., LLC v. Patrick</u>, 693 F.3d 1, 27 (1st Cir. 2012) (citing <u>Salazar v. Buono</u>, 559 U.S. 700, 714 (2010)). A party "seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. [The party] must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010). Equitable relief is not granted as a matter of course, and injunctions in particular should be used sparingly due to their potential scope and duration. Hekking v. Hekking, C.A. No. 14-295JJM, 2018 WL 6583845, at *2 (D.R.I. Dec. 14, 2018); see Me. Educ. Ass'n Benefits Tr. v. Cioppa, 842 F. Supp. 2d 386, 388 (D. Me. 2012), aff'd, 695 F.3d 145 (1st Cir. 2012) ("[T]he Court must bear constantly in mind that an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.").

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of injunctions.[8] It mandates that the contents of an order granting an injunction must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A-C). "Rule 65(d)(1)(A) must be given a commonsense construction, not a hypertechnical one." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 10 (1st Cir. 2014). It is sufficient if a court makes "the essence of its reasoning plain before ordering injunctive relief." Id.

When a motion for an injunction is referred to a magistrate judge under the Federal Magistrates Act, 28 U.S.C. § 631, *et seq.*, the magistrate judge must address it through the issuance of a report and recommendation. See 28 U.S.C. § 636(b)(1)(B-C). In so doing, the magistrate judge must "submit to a [district] judge of the court proposed findings of fact and recommendations for the disposition." Id. § 636(b)(1)(B). And the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or

---

[8] Attorneys Coloian and Calabro argue that the Court should eschew the making of findings in reliance on Fed. R. Civ. P. 52(a)(3). However, Fed. R. Civ. P. 52(a)(3) permits an abbreviated approach only for motions under Fed. R. Civ. P. 12 and 56 and other motions, "unless these rules provide otherwise." This motion arises under Rule 65, which specifically requires a statement of reasons.

recommendations to which objection is made." Id. § 636(b)(1)(C). In this context, the magistrate judge "does not rule directly on such a motion, but rather must file a report containing findings of fact and recommendations for the assistance of the district judge who makes the ruling." Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 954 (6th Cir. 1985).

Based on the foregoing, it is clear that Fed. R. Civ. P. 65(d)(1)(A-C) and 28 U.S.C. § 636(b)(1)(A-C) require more than the undeveloped statement that Attorneys Coloian and Calabro came into possession of Confidential Information and that Brady Sullivan has proffered enough to meet the legal standard for an injunction. Such a truncated approach would not adequately "state the reasons why [the injunction should be] issued." Fed. R. Civ. P. 65(d)(1)(A); see Watchtower Bible, 773 F.3d at 10 ("essence" of court's reasoning must be "plain"). Nor would it fulfill my statutory obligation to provide the district judge with "proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B). Accordingly, I find that a more fulsome set of proposed facts is required, well beyond what Attorneys Coloian and Calabro contend is sufficient.

## III. APPLICABLE ETHICAL STANDARDS

The Rhode Island Rules of Professional Conduct implicated by the motion may be briefly summarized.

First, R.I. Rule 1.7(a), titled, "Conflict of interest: Current clients," governs conflicts of interest and provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A conflict is presented not only when there is direct adversity, but also if the concurrent representation of a client gives rise to a significant risk that the representation of another client will materially limit the lawyer's ability to represent either or both clients. Id. 1.7(a)(1-2). In the latter circumstance, the Rule carves out an exception if the

lawyer believes that she will be able to provide competent and diligent representation of each affected client; nevertheless, such an engagement is permitted only if each affected client gives informed consent, which must be confirmed in writing.  Id. 1.7(b)(4).  Related to R.I. Rule 1.7 is R.I. Rule 4.3, which bars a lawyer from giving legal advice to an unrepresented person (other than the advice to secure counsel) if the lawyer knows that it is reasonably possible that the interests of such a person are in conflict with the interests of an existing client.

The most significant of the Rules implicated by the events in issue is R.I. Rule 4.4, titled, "Respect for rights of third persons."  Subsection (a) of R.I. Rule 4.4 provides:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

The Rhode Island Rules of Professional Conduct permit a lawyer to communicate with the former employee of a represented party-opponent.  R.I. Rule 4.2, comment [7].  However, the relevant comment warns that such communications must be done with due regard for R.I. Rule 4.4(a).  R.I. Rule 4.2, comment [7] ("In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.") (citing R.I. Rule 4.4).  The comment to R.I. Rule 4.4 echoes this caution, providing that the lawyer may not willfully disregard the rights of a third party, such as the former employer of a witness, including the right to be free from "unwarranted intrusions into privileged relationships, such as the client-lawyer relationship."  See R.I. Rule 4.4, comment [1].

While Rhode Island courts have not interpreted R.I. Rule 4.4(a), at the time of the initial adoption of the Rules, it was noted that the Rules of Professional Conduct should be read consistently with the American Bar Association ("ABA") Model Rules of Professional Conduct, "unless there was a good reason for not doing so."  See § 11.2 Authority for Ethics

Considerations, 2011 WL 5027363 (quoting Memorandum of Transmittal of Proposed Rules of Professional Conduct to the Rhode Island Supreme Court (Jan. 6, 2006)). Therefore, it is appropriate for the Court to look to the interpretations by other states of analogous rules derived from the ABA Model Rules. For example, the Bar Association for the District of Columbia has interpreted its analog to R.I. Rule 4.4:

> The most significant concern in [communication with former employees of a party opponent] is the possibility that the former employees were privy to privileged information and that, without counsel present, they might be inclined to reveal this information to the opposing lawyer. This concern is serious and a lawyer may not solicit information when communicating with former employees of a party-opponent that is reasonably known or which reasonably should be known to the lawyer to be protected from disclosure . . . by an established evidentiary privilege. We based this conclusion on Rule 4.4, which requires lawyers to refrain from using "methods of obtaining evidence that violate the legal rights of [third parties]." These rights include the former employer's right to protect its privileged information from disclosure.

Ex Parte Contact With Former Employees of Party-Opponents, D.C. Bar Ethics Opin. 287, available at https://www.dcbar.org.bar-resources/legal-ethiscs/opinions/opinions287.cfm. (internal citations omitted). Similarly, cases from other jurisdictions with an analogous rule emphasize that an attorney who communicates with the former employees of a party-opponent must affirmatively "take care not to seek to induce or listen to disclosures by former employees of privileged communications." Aiken v. Bus. & Indus. Health Grp., Inc., 885 F. Supp. 1474, 1480 (D. Kan. 1995); see, e.g., Chamberlain Grp., Inc. v. Lear Corp., 270 F.R.D. 392, 398 (N.D. Ill. 2010) ("[I]t is generally 'an improper litigation tactic to use a disgruntled employee to secretly obtain non-public internal business documents from an opposing party.'"); Arnold v. Cargill Inc., No. 01-2086 (DWF/AJB), 2004 WL 2203410, at *7-9 (D. Minn. Sept. 24, 2004) (to comply with Rule 4.4, before communicating with former employee of adverse party, attorneys have affirmative duty to advise former employee that he cannot disclose privileged

communications; without such warning, court may conclude from circumstances that privileged and confidential information was disclosed despite denials by attorneys); In re Grievance Proceeding, No. 3:01GP6(SRU), 2002 WL 31106389, at *3 (D. Conn. July 19, 2002) (during *ex parte* contact, "plaintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy") (quoting Dubois v. Gradco Sys., 136 F.R.D. 341, 347 (D. Conn. 1991)).

In summary, while there is no barrier to an attorney interviewing or developing evidence from the former employee of a party-opponent, it is a clear violation of R.I. Rule 1.7(a) for an attorney to form an attorney-client relationship with the former employee of a party-opponent without carefully considering and appropriately addressing all conflicts of interest, including all limitations on the attorneys' ability to simultaneously represent a litigant and the former employee of the party opposing the litigant.  It also is a clear violation of R.I. Rule 4.3 for an attorney to give any legal advice to an unrepresented former employee of an opposing party if there is a reasonable possibility of a conflict arising from the attorney's existing attorney-client relationship with the litigant opposing the former employer.  And if an attorney communicates with the former employee of an opposing party, R.I. Rule 4.4(a) mandates that the attorney undertaking such communications has an affirmative duty to proceed with due care to ensure that the former employee does not inadvertently or intentionally disclose privileged attorney-client or other confidential information in violation of the legal rights of the opposing party.

## IV.     PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The proposed factual findings that follow are drawn from an array of sources.  I relied on the facts proposed by Brady Sullivan, ECF No. 65-2 ("BS Proposed Facts ¶ __"), focusing on those to which Attorneys Coloian and Calabro did not interpose any objection, apart from their

vague assertion that all of the Brady Sullivan facts lack the support of sufficient evidence.[9]

Mindful of the latter plaint, I also reexamined various sources of evidence to ensure that each of

the facts that follow is grounded in an adequate evidentiary foundation.  In so doing, I relied,

first, on prior findings made at hearings held on June 27, 2018 (ECF No. 54), and on December

21, 2018 (ECF No. 71), in the Cases, as well as on the representations made during colloquy

with Attorneys Coloian and Calabro at those hearings.  Second, for the limited purpose of

supporting the finding that some of the Confidential Information has not been recovered, I relied

on the representations of counsel made during colloquy with Attorney Alberto Cardona[10] at the

hearing in 18-133 held on February 28, 2019.  Third, I relied on my *in camera* review of a

subset[11] of the documents taken by Rahn; the findings based on the *in camera* review were

announced on the record during the hearing on June 27, 2018, at which Attorneys Coloian and

Calabro were present.  Transcript June 27, 2018, at 6-8 (*in camera* review).  Fourth, I relied on

the depositions of Basabe and Rahn.[12]  ECF No. 34-3 ("Rahn Dep."); ECF No. 34-4 ("Basabe

---

[9] After Attorneys Coloian and Calabro acknowledged at the hearing on December 21, 2018, that at least some of the Brady Sullivan proposed facts were undisputed, the Court directed them to specify which are factually disputed and why.  Transcript Dec. 21, 2018, at 33 (ECF No. 71).  They complied.  Their specific objections to Brady Sullivan's proposed facts are found at ECF No. 72-7 at 2-4.  Plaintiffs did not object separately to any of Brady Sullivan's proposed facts, relying instead on whatever objections Attorneys Coloian and Calabro might assert.  Transcript Dec. 21, 2018, at 31.

[10] Attorney Cardona entered his appearance after Attorneys Coloian, Calabro and Doherty all withdrew as counsel for Basabe and Rahn in 18-133.

[11] The documents that were reviewed *in camera* were returned to Brady Sullivan at the September 25, 2018, hearing (ECF No. 64), with instructions for them to be filed on a sealed *ex parte* basis if Brady Sullivan wished to make them part of the record.  Transcript Sept. 25, 2018, at 18-19.  Together with other documents taken by Rahn, Brady Sullivan subsequently filed them *ex parte* under seal.  The *in camera* review set is filed at 18-133 ECF No. 62-3.

[12] These depositions were taken in 18-133 on March 30 and April 2, 2018.  Subsequently, the transcripts were filed in the Cases and the Court ruled that, although they had been taken in 18-133, they may be considered when resolving a motion in the Cases.  See Text Order of June 28, 2018 (citing Alexander v. Casino Queen, 739 F.3d 972, 978 (7th Cir. 2014)).  Each deposition is sealed because they contain the substance of Brady Sullivan's Confidential Information, including information relating to attorney-client communications.  The references to them in this report and recommendation are crafted to avoid disclosure of these secrets.  In addition, Brady Sullivan cites to a second Rahn deposition, taken on September 6, 2018.  That transcript was not filed so neither the Court nor Plaintiffs nor

Dep.").[13]  Fifth, I relied on the affidavits of Todd Romano, counsel for Brady Sullivan, and Mark

Schneider, Brady Sullivan's IT Manager.  ECF No. 17-2 ("Romano Aff."); ECF No. 17-3

("Schneider Aff.").  Finally, I used some of the proposed findings proffered by Attorneys

Coloian and Calabro.  ECF No. 72-7 at 5 ("C+C Proposed Facts ¶ __").[14]

It is important to note that none of the attorneys involved in these matters testified,

leaving me to rely instead on their representations made in filings and during hearings; relatedly,

I relied on transcripts of the testimony of Basabe and Rahn and did not hear them live.  This

approach to the issues was partly informed by my reluctance to put an officer of the court in the

witness box.  I also was mindful of the need to avoid placing Brady Sullivan's attorney-client

confidences at further risk of disclosure.  In any event, no party or attorney asked for an

evidentiary hearing.[15]  See, e.g., Transcript June 27, 2018, at 120.  Most importantly, however,

there did not appear to be material factual disputes that could be resolved only by the assessment

of credibility.  Rather, the disagreements seemed to derive from differing characterizations of the

facts and differing perspectives on events.[16]  In general, I found that all counsel, including

---

Attorneys Coloian and Calabro had access to it.  As a result, I relied on none of Brady Sullivan's proposed facts
sourced to that transcript.

[13] The pinpoint citations for the depositions correspond to the page number on the ECF header.

[14] The C+C Proposed Facts were presented "for the Court's consideration should this Court determine findings are
necessary to grant stipulated injunctive relief."  ECF No. 72-7 at 5.  Because my recommendation is not based on
"stipulated injunctive relief," I limited reliance on the C+C Proposed Facts to circumstances where there was other
evidence to support the finding.

[15] There is one exception: Brady Sullivan asked the Court to afford it an opportunity to present evidence in the event
that the post-hearing objections presented by Attorneys Coloian and Calabro created a material factual dispute.
Because the Coloian/Calabro objections left untarnished a more-than-adequate factual foundation for the permanent
injunction that I am recommending, I found that no such hearing was necessary.

[16] To illustrate, the evidence established that Brady Sullivan has first-hand knowledge of the attorney-client
communications its counsel had with Basabe and Rahn, while Attorneys Coloian and Calabro know only what they
recall of what they were told by Basabe and Rahn.  This difference of perspective explains, for example, the
discrepancy between the representation of Attorneys Coloian and Calabro that Basabe had never met with counsel
for Brady Sullivan, ECF No. 72-7 at 2, and Brady Sullivan's insistence that he did.  The absence of a genuine factual

Attorneys Coloian and Calabro, conducted themselves throughout these proceedings with due regard for their duty of candor towards the tribunal. See R.I. Rule 3.3 ("Candor toward the tribunal"). In the end, I concluded that the relief requested by Brady Sullivan is well supported by the largely undisputed version of events on which the following proposed facts are based, and I found that a time-consuming evidentiary hearing, which would have been required if the Court had to resolve credibility issues, was unnecessary.

My proposed findings of fact and related conclusions of law[17] are as follows:

1.      After the Cases were filed by Attorneys Coloian and Calabro in the Rhode Island Superior Court on January 25, 2018, and removed to this Court, two management-level employees of Brady Sullivan (Basabe, the Maintenance Manager, and Rahn, the Property Manager) abruptly resigned on March 2 and 7, 2018, respectively. Basabe Dep. at 12; Rahn Dep. at 47-49; BS Proposed Facts ¶¶ 6, 11, 13, 33, 37.

2.      Prior to their resignations, both of the former employees had interacted with Brady Sullivan's attorneys in connection with the Cases and/or related matters. Basabe Dep. at 145-46, 156-62; Rahn Dep. at 44-46, 81-82, 122-23. Both of the former employees understood that these communications with Brady Sullivan's attorneys were protected by the attorney-client privilege. Basabe Dep. at 158, 167, 171-72; Rahn Dep. at 123-24. During her employment, Rahn was specifically advised that any communications with Brady Sullivan's counsel were confidential at its discretion. Rahn Dep. at 131-33. At least as to Rahn, the privileged

---

dispute is clinched by Basabe's unimpeached testimony that he did have such a meeting. E.g., Basabe Dep. at 156-58.

[17] These findings of fact and conclusions of law are presented together because, unlike Fed. R. Civ. P. 52(a), § 636 does not require that they be stated separately. Compare Fed. R. Civ. P. 52(a) (for bench trial, "court must find the facts specially and state its conclusions of law separately"), with 28 U.S.C. § 636(b)(1)(B) (magistrate judge shall submit "proposed findings of fact and recommendations for the disposition, by the judge of the court, of any motion").

communications to which she was privy referenced Brady Sullivan's litigation strategy for the Cases and related matters. Transcript June 27, 2018, at 7 (*in camera* review).

3.     As a condition of their employment with Brady Sullivan, both of the former employees had signed confidentiality agreements barring, *inter alia*, the disclosure of certain confidential information related to Brady Sullivan's products or services; the agreement defined "confidential information" as any business data or information not generally known outside the company.[18] Basabe Dep. at 141-43; Rahn Dep. at 128-30; BS Proposed Facts ¶¶ 14-15. The contractual obligations of Basabe and Rahn under the confidentiality agreements survived the termination of employment with Brady Sullivan. BS Proposed Facts ¶ 16. Rahn was also aware that her employment was subject to the provisions in Brady Sullivan's employee handbook, which strictly prohibited the unauthorized disclosure of Brady Sullivan's confidential information. Rahn Dep. at 125-30.

4.     Upon resigning, the former employees immediately engaged Attorneys Coloian and Calabro to represent them in connection with matters pertaining to Brady Sullivan. Basabe Dep. at 176-78; Rahn Dep. at 47-48; BS Proposed Facts ¶¶ 32-33, 37-38. At the time of these engagements, Attorneys Coloian and Calabro were actively engaged to represent Plaintiffs and other tenants or former tenants of Brady Sullivan contemplating or already in litigation against it. BS Proposed Facts ¶¶ 26-27, 29; Transcript June 27, 2018, at 84-85, 108.

5.     In violation of R.I. Rule 1.7(a) and R.I. Rule 4.3, Attorneys Coloian and Calabro undertook the engagements to represent, and provided legal advice to, the former employees

---

[18] It is important to note that the Court has not directly addressed either the enforceability of the confidentiality agreements or what specific factual information known to Basabe and Rahn those agreements rendered confidential. This contrasts with the information taken by Rahn that is protected by the attorney-client privilege. Based on the Court's *in camera* review, I find that Rahn wrongly took privileged information protected by Brady Sullivan's attorney-client privilege and wrongly disclosed privileged information to the attorneys for the directly adverse party.

despite conflicts between the interests of the former employees and the concurrent clients of Attorneys Coloian and Calabro, Plaintiffs and the other tenant clients. These conflicts created a significant risk that the representation of the former employees would be materially limited by Attorneys Coloian and Calabro's representation of Plaintiffs and their other tenant clients,[19] as well as that the representation of Plaintiffs and their other tenant clients would be materially limited by Attorneys Coloian and Calabro's representation of the former employees.[20] Transcript June 27, 2018, at 11-12; Transcript Dec. 21, 2018, at 5, 11.

6.     Notwithstanding the requirements of R.I. Rule 1.7(b)(4), Attorneys Coloian and Calabro did not obtain written informed consent from the former employees to the limitations on the Attorneys' ability to represent the former employees in light of the Attorneys' concurrent representation of Plaintiffs and their other tenant clients. See BS Proposed Facts ¶¶ 27, 29. Attorneys Coloian and Calabro also did not obtain written informed consent from Plaintiffs and their other tenant clients to the limitations on the Attorneys' ability to represent Plaintiffs and their other tenant clients in light of the Attorneys' concurrent representation of the former employees. Transcript June 27, 2018, at 86.

7.     After they were engaged to represent him, and aware that he was a former employee of Brady Sullivan, Attorneys Coloian and Calabro met with and obtained information from Basabe. Basabe Dep. at 15, 176, 181-86. While the content of those oral communications is not known,[21] there is no evidence that Attorneys Coloian and Calabro advised Basabe of his

---

[19] By way of one example only, the duty Attorneys Coloian and Calabro owed to Plaintiffs to uncover information to aid in prosecution of the Cases limited their ability to properly advise the former employees regarding the risk of breaching their legal duties to Brady Sullivan.

[20] One significant limitation is the inability of Attorneys Coloian and Calabro to aggressively cross examine the former employees on behalf of Plaintiffs and the other tenant clients. See Transcript June 27, 2018, at 108, 113.

[21] Basabe was instructed not to answer all questions regarding the content of his privileged communications with Attorneys Coloian and Calabro. E.g., Basabe Dep. at 185-86. Therefore, I make no finding with respect to whether

duty not to disclose the content of attorney-client communications with Brady Sullivan's attorneys during his employment with Brady Sullivan as its Maintenance Manager, or of any other duties not to disclose Brady Sullivan's confidential information. Immediately after the meeting with Basabe, Attorney Coloian told an attorney for Brady Sullivan that Basabe had provided certain information; the Brady Sullivan attorney, who had met at least once with Basabe, immediately recognized the information as what he had discussed with Basabe in the course of a privileged communication on behalf of Brady Sullivan. Romano Aff. ¶¶ 12-14; Basabe Dep. at 156-58 (acknowledging that he knew his communications while meeting with Attorney Romano were privileged). As a result of Attorney Coloian's statements regarding his communications with Basabe, Brady Sullivan was placed in fear that its attorney-client relationship had been breached, as well as that its contractually protected secrets had been revealed.

8.      During their communications with Basabe, who was relying on them to advise him, Attorneys Coloian and Calabro acted with disregard for the legal rights of Brady Sullivan, particularly its right to unwarranted intrusion into privileged communications, such as the client-lawyer relationship. This conduct violated R.I. Rule 4.4(a).

9.      During her employment with Brady Sullivan as its Property Manager, Rahn was privy to Brady Sullivan's privileged attorney-client communications and attorney work product (including litigation strategy) directly related to the matters in issue in the Cases. See Transcript June 27, 2018, at 6-8 (*in camera* review). While still employed at Brady Sullivan, Rahn surreptitiously printed, copied to thumb drives or CDs and/or emailed to her home email account substantial quantities of Brady Sullivan's privileged attorney-client communications and attorney

---

Basabe actually disclosed Confidential Information. Rather, I find that Brady Sullivan's fear that he did is well founded.

work-product, as well as what may be non-privileged Confidential Information.  Transcript June 27, 2018, at 6-7, 27-28, 87-93, 101-02; Rahn Dep. at 140-42, 155-57; Schneider Aff. ¶¶ 11-12; BS Proposed Facts ¶¶ 45-47, 52-53.  Rahn's taking of such material was a breach of her duty of loyalty to Brady Sullivan, a breach of Brady Sullivan's contractual rights under the confidentiality agreement and in derogation of Brady Sullivan's legal right to the protection of its privileged attorney-client communications and attorney work product.  <u>See</u> Rahn Dep. at 131-32.

      10.     After they had formed an attorney-client relationship with Rahn, and knowing that she had just resigned as Property Manager of Brady Sullivan, a party opponent, Attorneys Coloian and Calabro met with Rahn twice and obtained information from her.  Rahn Dep. at 28.  While the content of the oral communications that she had with the Attorneys is unknown,[22] there is no evidence that Attorneys Coloian and Calabro advised Rahn of her duty not to disclose the content of attorney-client communications with Brady Sullivan's attorneys during her employment with Brady Sullivan as its Property Manager, or of any other duties not to disclose Brady Sullivan confidential information.  There is no evidence that Attorneys Coloian and Calabro took care not to seek, to induce or to listen to disclosures of privileged communications or other protected Confidential Information in violation of their duty to abjure the use of a method of obtaining evidence that amounts to "unwarranted intrusions into privileged relationships, such as the client-lawyer relationship."  R.I. Rule 4.4, comment [1].

      11.     Because Rahn understood that Attorneys Coloian and Calabro, whom she had engaged to act as her attorneys, had requested that she provide them with all of the documents

---

[22] Rahn was instructed not to answer all questions regarding the content of her privileged communications with Attorneys Coloian and Calabro.  <u>E.g.</u>, Rahn Dep. at 75-77.

that she had surreptitiously taken during her employment with Brady Sullivan,[23] she provided the documents to Attorneys Coloian and Calabro over a period of several days in email and hard copy and on thumb drives. Rahn Dep. at 144-46. The documents that she provided to Attorneys Coloian and Calabro contained what may be Brady Sullivan's non-privileged Confidential Information and included many documents that were obviously Brady Sullivan's privileged attorney-client communications and attorney work product directly related to the matters in issue in the Cases. Transcript June 27, 2018, at 6-7, 27-28 (*in camera* review); C+C Proposed Facts ¶ 3; BS Proposed Facts ¶¶ 47-48, 50-54, 56.

12. While most of the material provided by Rahn was not read or accessed, Attorneys Coloian and Calabro read at least some of Brady Sullivan's privileged attorney-client information contained in the documents provided by Rahn. Transcript June 27, 2018, at 87, 99-100, 102; BS Proposed Facts ¶¶ 50-51; see ECF No. 26-1 at 3 ("Counsel read a total of 7 emails, not all of which contained attorney-client communications.").

13. Based on their review of at least some of Brady Sullivan's privileged attorney-client information contained in the documents provided by Rahn, Attorneys Coloian and Calabro notified Brady Sullivan that they had received Brady Sullivan's purloined attorney-client and attorney work product information.[24] After that, they accepted more documents from Rahn,

---

[23] My finding is based on Rahn's testimony regarding her understanding of what she was told by Attorneys Coloian and Calabro – "they asked for them." Rahn Dep. at 144. In their objection to Brady Sullivan's reliance on this aspect of Rahn's testimony, the Attorneys used carefully cabined language, asserting that, "[n]either Coloian or Calabro asked for 'those' emails as neither Coloian or Calabro knew the contents of the emails prior to them being sent." ECF No. 72-7 at 4. Mindful of this limited denial, I make no finding regarding what the Attorneys actually said to Rahn. Rather, I find that, in the setting of an attorney-client communication, the Attorneys said enough to cause Rahn to understand that they wanted her to give them all of the documents that she had surreptitiously taken during the period of her employment and they took no steps to advise her to avoid the transmission of attorney-client documents or other Confidential Information.

[24] To justify their conduct, Attorneys Coloian and Calabro make the *ex post* argument that they provided Brady Sullivan with the notice contemplated by R.I. Rule 4.4(b). However, R.I. Rule 4.4(b) applies to the circumstance of inadvertent disclosure, which is not the case here. I make no finding with respect to compliance with R.I. Rule 4.4(b); rather, I find that the claim of Attorneys Coloian and Calabro that they gave notice is confirmation that they

specifically the hard copy set of documents that included significant amounts of material protected by Brady Sullivan's attorney-client privilege. Transcript June 27, 2018, at 89-91 (*in camera* review). Attorneys Coloian and Calabro read at least one email from the hard copy set of documents. ECF No. 72-7 at 4 ("Coloian and Calabro collectively read only one of the printed emails.").

14.    Attorneys Coloian and Calabro accepted from Rahn the Brady Sullivan documents she had taken during the period of her employment in disregard for whether those documents constituted evidence taken in violation of the legal rights of Brady Sullivan and in disregard for whether any of the documents contained Brady Sullivan's privileged attorney-client communications and attorney work product taken in violation of Brady Sullivan's legal right to unwarranted intrusions into its privileged relationships. Attorneys Coloian and Calabro accepted these materials, knowing that Rahn relied on them as her attorneys to advise her, knowing that the material had been taken by Rahn during the course of her employment and – after they reviewed the first set – knowing that the material included documents that constituted Brady Sullivan's privileged attorney-client communications and work product.

15.    By engaging in the conduct described in Paragraphs 10 and 12 to 14, *supra*, Attorneys Coloian and Calabro used a method of obtaining evidence that was in disregard for, and in violation of, the legal rights of Brady Sullivan, amounting to an unwarranted intrusion into Brady Sullivan's privileged relationships, all contrary to the obligations imposed by R.I. Rule 4.4(a). Transcript June 27, 2018, at 6-7, 101; Transcript Dec. 21, 2018, at 5, 11.

16.    While it is not known what information was discussed when Attorneys Coloian and Calabro engaged in oral communications with Basabe and Rahn, and while the Attorneys

---

knew that Rahn was providing information protected by Brady Sullivan's attorney-client privilege, yet they did nothing to stop the flow and continued to accept documents from her.

reviewed only a few documents protected by Brady Sullivan's attorney-client privilege, what the Attorneys did see and hear is enough to give rise to a continuing risk of further dissemination of the Confidential Information, including attorney-client communications and attorney work product.

17.     Through no fault of Basabe, Rahn or Attorneys Coloian and Calabro, all of whom acted in good faith to comply with the Court's April 12, 2018, Order, the effort to recover all of the Confidential Information was not entirely successful, in that two thumb drives containing thousands of documents taken by Rahn appear to have been irretrievably lost.  Transcript Feb. 28, 2019, at 36-37.  This loss exacerbates the continuing risk of further dissemination of the Confidential Information, including the attorney-client communications and attorney work product.

18.     Because of the nature of the Confidential Information, particularly the attorney-client communications and attorney work product, and because the Cases and related matters continue as ongoing litigation and/or disputes likely to lead to litigation, further dissemination of the Confidential Information will irreparably harm Brady Sullivan.  See C+C Proposed Facts ¶ 5.

19.     Brady Sullivan is also subject to ongoing harm of "nagging suspicion" to the extent that Attorneys Coloian and Calabro retain the right to seek attorneys' fees or to assert an attorney's lien in connection with the Cases, which would give rise to a financial incentive or motivation to assist successor counsel by disclosing any Confidential Information that they learned as a result of their representation of Basabe and Rahn.  See MMR/Wallace Power & Indus. v. Thames Assocs., 764 F. Supp. 712, 727 (D. Conn. 1991) (litigant whose confidential information might wrongly have been disclosed to opposing counsel is harmed by ongoing "nagging suspicion").

20.     An Order barring Attorneys Coloian and Calabro from receiving or participating in attorneys' fees[25] arising as a result of the Cases[26] would have no adverse impact on Attorneys Coloian and Calabro because they have expressly agreed not to seek attorneys' fees in connection with the Cases.  Transcript Dec. 21, 2018, at 19.

21.     Brady Sullivan acted promptly upon learning of the breach of its legal rights.  See Romano Aff. ¶¶ 4-14.

22.     Brady Sullivan has inadequate remedies at law due to the nature of the Confidential Information, particularly the attorney-client communications and attorney work product.  C+C Proposed Facts ¶ 5.

23.     Plaintiffs and Attorneys Coloian and Calabro agree that Brady Sullivan is entitled to the permanent injunction requested in the motion.  C+C Proposed Facts ¶ 8; Transcript Dec. 21, 2018, at 18-19, 30-31.  Neither Plaintiffs nor Attorneys Coloian and Calabro argued or presented any evidence establishing that any of them would be harmed or prejudiced by the issuance of the permanent injunction requested in the motion.

24.     In light of the nature of the harm to Brady Sullivan (¶¶ 18-19, *supra*) and the lack of harm to Plaintiffs and Attorneys Coloian and Calabro (¶¶ 20, 23, *supra*), the balance of the equities favors the relief requested by Brady Sullivan.  See C+C Proposed Facts ¶ 6.

25.     Granting the relief requested by Brady Sullivan would be in the public interest in that the permanent injunction reduces and potentially eliminates the ongoing risk that further

---

[25] Brady Sullivan does not seek, and I do not recommend, any limitation on the right of Attorneys Coloian and Calabro to recover advanced costs.

[26] Brady Sullivan asks for this relief as a sanction to deter similar conduct and as a punishment for dilatory litigation tactics.  In light of my finding that non-participation in any fee earned in the Cases is justified by the equitable interest in reducing the harm to Brady Sullivan caused by "nagging suspicion," there is no need also to characterize this relief as a sanction.

proceedings in the Cases would be tainted by the use of evidence procured in violation of R.I. Rule 4.4(a). <u>See</u> C+C Proposed Facts ¶ 7.

26. Brady Sullivan continues to have a legally cognizable interest in the outcome of this motion because there is an ongoing risk of disclosure of its Confidential Information, particularly its attorney-client confidences. <u>See</u> <u>Mangual v. Rotger-Sabat</u>, 317 F.3d 45, 61 (1st Cir. 2003) (for matter to be moot under Article III, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"); <u>Martins v. Fed. Hous. Fin. Agency</u>, 214 F. Supp. 3d 163, 167 (D.R.I. 2016) (case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome).

## V.    RECOMMENDED PERMANENT INJUNCTION

"[T]aking into account all of the circumstances that bear on the need for prospective relief," I find that the law entitles Brady Sullivan to a permanent injunction in this case. <u>KG Urban Enters.</u>, 693 F.3d at 27. Accordingly, in reliance on the foregoing proposed findings of fact and conclusions of law, I recommend that the Court enter the following permanent injunction:

Until further Order of the Court, it is hereby ordered that:

(1)    Plaintiffs and Attorneys Coloian and Calabro are prohibited from any use or disposition in any way of Brady Sullivan's Confidential Information, which was obtained from Rahn or Basabe during their period of engagement with Attorneys Coloian and Calabro in 2018, provided that successor counsel for Plaintiffs may seek discoverable non-privileged information from Basabe and Rahn by deposition or through other means consistent with R.I. Rule 4.4(a);[27]

(2)    Plaintiffs and Attorneys Coloian and Calabro are prohibited from ever reviewing or discussing Brady Sullivan's Confidential Information obtained from Rahn or Basabe during their period of engagement with Attorneys Coloian and Calabro in 2018, with any other person or entity, including successor counsel for Plaintiffs, except as may be necessary to physically transfer client files; and

---

[27] This proviso was added *sua sponte* by the Court to avoid the potential for an interpretation of the Order as barring Basabe or Rahn from testifying as a fact witness.

(3)     Attorneys Coloian and Calabro are prohibited from receiving or otherwise participating in any attorneys' fees associated with or arising out of the claims asserted in the Cases.

## VI.    CONCLUSION

Based on the foregoing analysis, I recommend that Brady Sullivan's motion for a protective order and other relief (ECF No. 65), construed as a motion for a permanent injunction, be granted and that the Court enter a permanent injunction as set forth above.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 28, 2019